**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| SHIRLEY DUNLAP, Individually and For Others Similarly Situated | **Case No.** ________________ |
| v. | Jury Trial Demanded |
| WILLIAM PENN HEALTH CARE ASSOCIATES and QUEST HEALTHCARE DEVELOPMENT, INC. | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Shirley Dunlap (Dunlap) brings this class and collective action to recover unpaid wages and other damages from William Penn Health Care Associates (William Penn) and Quest Healthcare Development, Inc. (Quest) (collectively Defendants).

2. Defendants jointly employed Dunlap as one of their Hourly Employees (defined below) in Westmoreland County, Pennsylvania.

3. Defendants together paid Dunlap and the other Hourly Employees by the hour.

4. Dunlap and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Defendants do not pay Dunlap and the other Hourly Employees for all hours worked at their agreed hourly rates, including overtime hours.

6. Instead, Defendants automatically deduct 30 minutes a day from Dunlap's and the other Hourly Employees' hours for so-called "meal breaks" (Defendants' "auto-deduction policy").

7. But Defendants regularly fail to provide or make available *bona fide* 30-minute meal breaks to Dunlap and the other Hourly Employees.

8. Rather, Defendants require them to remain on duty throughout their shifts and/or subject them to interruptions during their unpaid, off the clock "meal breaks."

9. Dunlap and the other Hourly Employees are thus not paid their agreed earned wages for all hours worked.

10. Additionally, Defendants require Dunlap and the other Hourly Employees to clock in and out for their shifts via its timekeeping system, but automatically round their clock in and clock out punches to the nearest quarter hour for their own primary benefit (Defendants' "rounding policy").

11. Finally, Defendants pay Dunlap and the other Hourly Employees non-discretionary bonuses, including shift bonuses and sign on bonuses, as well as shift differentials, that it excludes from their regular rates of pay for overtime purposes (Defendants' "bonus pay scheme").

12. Defendants' auto-deduction policy, rounding policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) because these policies deprive Dunlap and the other Hourly Employees of premium overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

13. Additionally, Defendants' auto-deduction policy and rounding policy violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Dunlap and the other Hourly Employees of earned wages at the rates Defendants agreed to pay them, including overtime wages, on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16. This Court has general personal jurisdiction over Quest because it is a domestic corporation registered to do business in the Commonwealth and over William Penn because it is a domestic limited partnership. *See*, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also*, 42 Pa. Cons. Stat. § 5301.

17. Venue is proper because Defendants maintain their principal place of business in Westmoreland County, Pennsylvania, which is in this District and Division. 28 U. S. C § 1391(b)(1).

**PARTIES**

18. Defendants jointly employed Dunlap as a Licensed Practical Nurse (LPN) from approximately September 2023 to September 2024.

19. Throughout her employment, Defendants classified Dunlap as non-exempt and paid her by the hour.

20. Defendants employed Dunlap under their rounding policy, bonus pay scheme, and auto-deduction policy.

21. Dunlap's written consent is attached as **Exhibit 1**.

22. Dunlap brings this class and collective action on behalf of herself and similarly situated employees.

23. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees Defendants employed under their rounding policy, bonus pay scheme, and/or auto-deduction policy during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

24. Dunlap also seeks to represent a Pennsylvania class under FED. R. CIV. P. 23 defined as:

> **All hourly employees who worked in, or were based out of, Pennsylvania who Defendants employed under their rounding policy, bonus pay scheme, and/or auto-deduction policy during the past 3 years through final resolution of this action (the "Pennsylvania Class Members").**

25. The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

26. Quest is a Pennsylvania corporation that maintains its principal place of business in Jeannette, Pennsylvania.

27. Quest may be served with process by serving an agent, employee, or officer at its registered office address: **2030 Ader Road, Jeannette, Pennsylvania 15644**.

28. William Penn is a Pennsylvania limited partnership that maintains its principal place of business in Jeannette, Pennsylvania.

29. William Penn may be served with process by serving an agent, employee, or officer at its registered office address: **2030 Ader Road, Jeannette, Pennsylvania 15644**.

30. Defendants share common ownership.

31. For example, Daniel J. Wukich owns both William Penn and Quest.

32. Defendants share common management.

33. For example, Quest is itself the sole general partner of William Penn.

## COVERAGE UNDER THE FLSA

34. At all relevant times, Defendants jointly were an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

35. At all relevant times, each Defendant was an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

36. At all relevant times, each Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had employees

engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as computers, cellphones, personal protective equipment, etc., that have been moved in or produced for commerce.

37. At all relevant times, Defendants each had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38. At all relevant times, Defendants jointly employed Dunlap and other Hourly Employees as "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

39. At all relevant times, Dunlap and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce, or otherwise handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

## FACTS

40. Quest touts that it is "attuned to the needs of long-term healthcare providers because we own and operate several such facilities … currently operat[ing] various services in 13 states and continues to grow with nearly 600 employees nationwide."[1]

41. As one of these "long-term health care providers" Quest owns and operates, William Penn describes itself as "a skilled nursing facility."[2]

42. William Penn advertises open jobs and solicits applications through its website (as well as for Loyalhanna, another Quest facility).[3]

43. To apply for jobs, William Penn directs potential applicants to contact Jessica Kettren, who identifies herself as an HR Manager employed by Quest.[4]

---

[1] Exhibit 2, Quest Healthcare Development, Inc. Brochure.
[2] https://williampenncc.com/about-us/ (last visited November 24, 2025).
[3] https://williampenncc.com/careers/ (last visited November 24, 2025).
[4] *id.*; Exhibit 3, Jessica Kettren Quest Healthcare LinkedIn Profile.

44. To meet its business objectives Defendants jointly hire workers, like Dunlap and the other Hourly Employees to provide healthcare to its patients.

45. For example, Defendants employed Dunlap as an LPN in their commonly owned and operated Jeannette, Pennsylvania skilled nursing community from approximately September 2023 to September 2024.

46. Dunlap's job duties included monitoring residents, measuring residents' vital signs, medically assessing residents, providing necessary treatments, administering medications, and assisting residents with personal care tasks.

47. Dunlap regularly worked more than 40 hours in a workweek, doing so approximately every other workweek.

48. Indeed, Dunlap typically worked approximately 12 hours a day, 3 to 4 days a week "on the clock" (36 to 48 hours in a workweek).

49. Defendants paid Dunlap approximately $34.00 an hour.

50. Likewise, the other Hourly Employees typically work approximately 12 hours a day, 3 to 4 days a week "on the clock" (36 to 48 hours in a workweek).

51. And Dunlap and the other Hourly Employees are required to report their "on the clock" hours worked via the timekeeping system Defendants select and control.

52. At the end of each pay period, the Hourly Employees receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

53. But Defendants do not pay Dunlap and the other Hourly Employees at the agreed hourly rates for all hours worked, including overtime wages for overtime hours.

54. Instead, Defendants subject Dunlap and the other Hourly Employees to its common practice of automatically deducting 30 minutes from their hours and wages each shift for "meal breaks," regardless of whether they actually receive a *bona fide* meal break.

55. Indeed, Defendants simply assume that Dunlap and the Hourly Employees receive a *bona fide* meal break each workday.

56. But Defendants fail to provide or make available *bona fide* meal breaks.

57. Instead, Defendants require Dunlap and the other Hourly Employees to remain on duty and working throughout their shifts and subjects them to interruptions during their unpaid, so called meal breaks.

58. Indeed, because of these regular work interruptions, Dunlap and the Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

59. Rather, during their unpaid "meal breaks," Dunlap and the Hourly Employees are required to perform their regular job duties and responsibilities.

60. Thus, Dunlap and the Hourly Employees routinely spend their unpaid "meal breaks" performing their normal job duties for Defendants', not their own, predominant benefit.

61. This unpaid time is compensable under the FLSA and Pennsylvania law because Defendants knew, or should have known, that (1) Dunlap and the Hourly Employees were performing unpaid work during "meal breaks," (2) they were interrupted with work duties during attempted "meal breaks," (3) they were not completely relieved of all duties during "meal breaks," (4) they entirely skipped "meal breaks" due to work demands, (5) the "meal breaks" were less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their "meal breaks" because of regular interruptions, (7) they remained on Defendants' premises, under Defendants' supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their regular duties for Defendants' predominant benefit.

62. In addition to automatically deducting from these employees' wages for so called "meal periods," Defendants subject Dunlap and the Hourly Employees to its rounding policy.

63. Specifically, Defendants automatically round Dunlap's and the other Hourly Employees' clock in and clock out punches to the nearest quarter hour for Defendants'—not the employees'—primary benefit.

64. Defendants prohibit Dunlap and the other Hourly Employees from clocking in for their shifts more than 7 minutes before their scheduled start times and clocking out more than 7 minutes after their scheduled end times.

65. Defendants consider Dunlap and the other Hourly Employees late and takes disciplinary action or threatens to do so if they clock in even a minute after their scheduled start time and considers them to leave early if they clock out even a minute before their scheduled end time.

66. And Defendants take disciplinary action or threatens to do so if they clock in more than 7 minutes prior to their scheduled start time or clock out more than 7 minutes after their scheduled end time.

67. Defendants further require and expect Dunlap and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

68. By enforcing these policies, Defendants ensure their rounding policy primarily benefits Defendants—and detriments Dunlap and the other Hourly Employees.

69. Thus, under Defendants' rounding policy, Dunlap and the other Hourly Employees are denied wages for hours worked, and overtime wages for overtime hours during workweeks in which they work more than 40 hours.

70. Defendants fail to exercise their duty as Dunlap's and the other Hourly Employees' employer to ensure these employees are not performing work that Defendants do not want performed.

71. And Defendants know, should know, or recklessly disregard whether Dunlap and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks" and preceding and following their shifts.

72. Indeed, Dunlap and other Hourly Employees have complained to their supervisors, HR, and/or Defendants' management about being forced to work during their unpaid "meal breaks" and before and after their shifts.

73. Thus, Defendants required, requested, suffered, or permitted Dunlap and the other Hourly Employees to work for their predominant benefit during unpaid "meal breaks" and before and after their shifts.

74. Despite accepting the benefits, Defendants do not pay Dunlap and the other Hourly Employees for the compensable work they perform.

75. Finally, Defendants paid Dunlap and the other Hourly Employees pursuant to its bonus pay scheme.

76. Specifically, Defendants agreed to pay and subsequently paid Dunlap and the other Hourly Employees non-discretionary bonuses, such as sign on bonuses and shift bonuses (which Dunlap received during workweeks she worked overtime), based on its criteria.

77. But Defendants excluded these non-discretionary bonuses from Dunlap's and the other Hourly Employees' regular rates of pay for overtime purposes.

78. Thus, Defendants failed to pay Dunlap and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

79. As a result, under Defendants' auto-deduction policy, rounding policy, and bonus pay scheme, Dunlap and the other Hourly Employees are denied earned wages at their agreed rates for all hours worked, including overtime wages for overtime hours worked.

## Class And Collective Action Allegations

80. Dunlap brings her Pennsylvania state law claims as a class action pursuant to FED. R. CIV. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

81. Like Dunlap, the other Hourly Employees are uniformly victimized by Defendants' rounding policy, bonus pay scheme, and/or auto-deduction policy.

82. Other Hourly Employees worked with Dunlap and indicated they were paid in the same or similar manner, performed similar work, and were subject to Defendants' same or similar rounding policy, bonus pay scheme, and/or auto-deduction policy.

83. Based on her experiences with Defendants, Dunlap is aware Defendants' bonus pay scheme, rounding policy, and auto-deduction policy were imposed on other Hourly Employees.

84. The Hourly Employees are similarly situated in the most relevant respects.

85. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

86. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

87. Rather, the Hourly Employees are held together by Defendants' rounding policy, bonus pay scheme, and auto-deduction policy, which systematically deprive them of agreed wages, including overtime wages.

88. Defendants' shared records reflect the number of hours the Hourly Employees recorded working "on the clock" each workweek

89. Defendants' shared records further reflect that it automatically deducted 30 minutes a workday for so called "meal breaks."

90. Defendants' shared records show it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

91. And Defendants' shared records show it paid the Hourly Employees non-discretionary bonuses that they excluded from the Hourly Employees' regular rates of pay for overtime purposes.

92. The back wages owed to Dunlap and the other Hourly Employees can be calculated using same formula applied to the same records.

93. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

94. Therefore, the issue of damages does not preclude class or collective treatment.

95. Dunlap's experiences are typical of the other Hourly Employees.

96. Dunlap has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

97. Dunlap has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Pennsylvania law.

98. Dunlap and her counsel will fairly and adequately protect the interests of the Hourly Employees.

99. Dunlap retained counsel with significant experience in handling complex class and collective action litigation.

100. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA and Pennsylvania law.

101. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

102. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Defendants.

103. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

104. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

105. Among the common questions of law and fact are:

a. Whether Defendants automatically deducted 30 minutes from the Hourly Employees' hours for "meal breaks";

b. Whether Defendants' auto-deduction policy deprived the Hourly Employees of wages for time worked during meal breaks that were not *bona fide*, continuous, and uninterrupted;

c. Whether Defendants automatically rounded the Hourly Employees' punch in and out times for its own primary benefit;

d. Whether Defendants paid the Hourly Employees non-discretionary bonuses they failed to include in the Hourly Employees' regular rates of pay for overtime purposes;

e. Whether Defendants' decision not to pay the Hourly Employees agreed, earned wages, including overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked was made in good faith;

f. Whether Defendant failed to pay the Hourly Employees earned wages for all their hours worked, in violation of the WPCL and whether this was the result of a bona fide dispute; and

g. Whether Defendants' violations of the FLSA and Pennsylvania law were willful.

106. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

107. The Hourly Employees are known to Defendants, are readily identifiable, and can be located through Defendants' business and personnel records.

**DEFENDANTS' VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A BONA FIDE DISPUTE**

108. Defendants knew they employed Dunlap and the other Hourly Employees.

109. Defendants knew they were subject to the FLSA's and PMWA's overtime provisions.

110. Defendants knew the FLSA and PMWA required them to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

111. Defendants knew they were subject to the WPCL.

112. Defendants knew the WPCL required them to pay employees, including its Hourly Employees, all agreed, earned wages (including overtime) on their regular paydays and following the termination of employment.

113. Defendants knew Dunlap and the other Hourly Employees were non-exempt employees entitled to overtime pay.

114. Defendants knew Dunlap and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via their timekeeping system.

115. Defendants knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

116. Defendants knew it failed to provide or make available *bona fide*, uninterrupted meal breaks to Dunlap and the other Hourly Employees.

117. Defendants knew Dunlap and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

118. Defendants knew it required, requested, suffered, or permitted Dunlap and the other Hourly Employees to work for its predominant benefit during their unpaid "meal breaks."

119. Defendants knew that, as Dunlap's and the other Hourly Employees' employers, they had a duty to ensure they were not performing work "off the clock" (without pay) that Defendants did not want performed.

120. Defendants knew Dunlap and the other Hourly Employees regularly worked "off the clock" during their "meal breaks" performing their regular job duties for Defendants' predominant benefit.

121. Defendants knew they paid Dunlap and the other Hourly Employees non-discretionary bonuses they excluded from their regular rates of pay for overtime purposes.

122. Defendants knew they were required to include these non-discretionary bonuses in Dunlap's and the other Hourly Employees' regular rates of pay for overtime purposes.

123. Defendants' decision to automatically deduct at least 30 minutes a workday from Dunlap's and the other Hourly Employees' hours for "meal breaks" was neither reasonable, nor was it made in good faith.

124. Defendants' failure to pay their Hourly Employees earned wages for all hours worked on regular paydays and following the termination of their employment was unreasonable.

125. Defendants' failure to pay their Hourly Employees their earned wages was not the result of a *bona fide* dispute.

126. Defendants knowingly, wilfully, and/or in reckless disregard carried out its unlawful rounding policy, bonus pay scheme, and auto-deduction policy that deprived Dunlap and the other Hourly Employees of earned wages, including overtime wages at the required rate of pay—based on all remuneration—for all overtime hours, in violation of the FLSA, PMWA, and WPCL.

127. Defendants knew, should have known, or recklessly disregarded whether their conduct described in this Complaint violated the FLSA and Pennsylvania law.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

128. Dunlap brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

129. Defendants violated, and are violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

130. Defendants' unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

131. Accordingly, Defendants owe the FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

132. Because Defendants knew or showed reckless disregard for whether their rounding policy, bonus pay scheme, and auto-deduction policy violated the FLSA, Defendants owe Dunlap and the other FLSA Collective Members these wages for at least the past 3 years.

133. Defendants are also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

134. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
## (PENNSYLVANIA CLASS)

135. Dunlap brings her PMWA claim as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

136. The conduct alleged violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*)

137. At all relevant times, Defendants were subject to the PMWA because Defendants were (and are) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

138. At all relevant times, Defendants jointly employed the Pennsylvania Class Members as their covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

139. The PMWA requires employers, like Defendants, to pay non-exempt employees, including the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

140. Defendants violated, and are violating, the PMWA by employing non-exempt employees such as the Pennsylvania Class Members for workweeks in excess of 40 hours without

paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

141. Defendants' unlawful conduct harmed the Pennsylvania Class Members by depriving them of the overtime wages they are owed.

142. Accordingly, Defendants owe the Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

143. Finally, the Pennsylvania Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

**COUNT III**
**FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL**
**(WPCL CLASS)**

144. Dunlap brings her WPCL claims as a class action on behalf of herself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

145. Defendants' conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

146. At all relevant times, Defendants were subject to the WPCL because Defendants were (and are) "employers" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

147. At all relevant times, Defendants employed the Pennsylvania Class Members as covered "employees" within the meaning of the WPCL.

148. The WPCL requires employers, like Defendants, to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

149. Defendants violated, and are violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

150. The Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

151. Defendants' unlawful conduct harmed the Pennsylvania Class Members by depriving them of the earned wages they are owed.

152. Defendants' failure to pay the Pennsylvania Class Members all their earned wages was not the result of a *bona fide* dispute.

153. Rather, Defendants knowingly failed to pay earned wages to the Pennsylvania Class Members.

154. Accordingly, Defendants owe the Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

155. Defendants also owe the Pennsylvania Class Members liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.9a.

156. Finally, the Pennsylvania Class Members are entitled to recover their attorney's fees and costs. See 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

157. Dunlap demands a trial by jury on all Counts.

## RELIEF SOUGHT

Dunlap, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the

FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Dunlap and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Defendants liable to Dunlap and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding Defendants liable to Dunlap and the other Hourly Employees for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding Defendants liable to Dunlap and the other Hourly Employees for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

g. A Judgment against Quality awarding Dunlap and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: December 3, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/Michael A. Josephson*
Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist
PA ID No. 85745
William F. Goodrich
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR DUNLAP AND THE HOURLY EMPLOYEES**